[Cite as *State ex rel. Cleveland v. Indus. Comm.*, 2022-Ohio-137.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. City of Cleveland, Ohio, | : | |
| Relator, | : | |
| v. | : | No. 19AP-493 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on January 20, 2022

**On brief:** *Barbara A. Langhenry,* Director of Law City of Cleveland, and *Wesley M. Kretch,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Anna Isupova,* for respondent Industrial Commission of Ohio.

**On brief:** *Nager, Romaine & Schneiberg, Co., L.P.A.,* and *James Zink,* for respondent Charles Bremer.

IN MANDAMUS

MENTEL J.

{¶ 1} Relator, City of Cleveland, brought this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order that granted the request of respondent, Charles Bremer, for permanent total disability compensation and to enter an order denying such compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred the matter to a magistrate of this court. On September 15, 2021, the magistrate issued the appended decision. The magistrate's decision included findings of fact and conclusions of law and recommended that we deny the requested writ of mandamus.

{¶ 3} Relator has not filed any objections to the magistrate's decision. Pursuant to Civ.R. 53(D)(4)(c): "If no timely objections are filed, the court may adopt a magistrate's decision, unless [the court] determines that there is an error of law or other defect evident on the face of the magistrate's decision." Our review of the magistrate's decision reveals no error of law or other evident defect. *See, e.g., State ex rel. Alleyne v. Indus. Comm.*, 10th Dist. No. 03AP-811, 2004-Ohio-4223, ¶ 4.

{¶ 4} For the foregoing reasons, we adopt the magistrate's decision, including findings of fact and conclusions of law, and deny relator's complaint for a writ of mandamus.

*Writ of mandamus denied.*

LUPER SCHUSTER, P.J. and DORRIAN, J., concur.

_____

# **A P P E N D I X**

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State ex rel. City of Cleveland, Ohio,       :

        Relator,                                  :

v.                                           :                  No. 19AP-493

Industrial Commission of Ohio et al.,        :             (REGULAR CALENDAR)

        Respondents.                              :

---

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on September 15, 2021

---

*Barbara A. Langhenry,* Director of Law, and *Wesley M. Kretch,* Assistant Director of Law for Relator.

*Dave Yost,* Attorney General, and *Anna Isupova,* for respondent Industrial Commission of Ohio.

*Nager, Romaine & Schneiberg, Co., L.P.A.,* and *James Zink*, for respondent Charles Bremer.

---

### IN MANDAMUS

**{¶ 5}** Relator, City of Cleveland ("employer"), has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that granted the request of respondent, Charles Bremer ("claimant"), for permanent total disability ("PTD") compensation, and to enter an order denying the compensation.

Findings of Fact:

{¶ 6}   1. On January 19, 2012, claimant sustained an industrial injury when he was working in the utility bucket of a truck, and the truck tipped over. His workers' compensation claims were allowed for the following conditions: sprain of right wrist; sprain left shoulder; contusion of face; fracture low radius with ulna closed right; open wound of jaw; adjustment disorder with anxiety/depression; substantial aggravation of pre-existing right wrist distal radioulnar joint arthritis; traumatic arthropathy right wrist; and lateral epicondylitis in left elbow.

{¶ 7}   2. On September 19, 2017, claimant underwent an initial assessment regarding vocational rehabilitation services, and the report indicated the following: (1) claimant expressed that he was interested in vocational rehabilitation services but was concerned with whether such services were feasible; (2) claimant agreed to participate in rehabilitation services and signed a rehabilitation agreement and authorization to release medical information; (3) claimant is open to exploring alternative employment options if his return to work as a lineman is not feasible; (4) claimant's motivation to return to work is uncertain because he does not know what kind of work he would be able to perform; (5) claimant indicated he would like to earn approximately $38 per hour, and his lowest acceptable wage for him would be $25 per hour; (6) claimant is not willing to relocate for employment but is willing to travel up to one hour for suitable employment; and (7) based on the initial assessment and on information received and reviewed, it is undetermined and unlikely that claimant is an appropriate candidate for vocational rehabilitation services.

{¶ 8}   3. On October 17, 2017, claimant underwent a functional capacity evaluation, and the report from that evaluation indicated the following: (1) claimant demonstrated full physical effort throughout the evaluation; (2) claimant's reports of pain and disability were reasonable and reliable; (3) claimant functions within a less than sedentary physical demand level with regard to lifting, pushing, pulling, and carrying; (4) claimant is unable to use his right upper extremity to reach forward, to perform any sustained functional writing activities, to grasp, to perform repetitive or sustained fine finger activities, or engage in pinching activities; and (5) although claimant's tolerance for

sitting, standing, and walking is unrestricted, he has significant functional loss of use of his right upper extremity, which is a significant impediment to return to the workforce.

{¶ 9}   4. On November 20, 2017, claimant's case manager issued a vocational rehabilitation closure report, in which the case manager concluded that claimant was not a feasible candidate for vocational rehabilitation services.

{¶ 10} 5. On April 2, 2018, Todd S. Hochman, M.D., issued a report in which he stated that claimant was permanently and totally disabled as a result of the January 19, 2012, work accident, and the conditions recognized in the claim.

{¶ 11} 6. On April 30, 2018, Raymond Richetta, Ph.D., issued a report in which he found claimant was permanently and totally disabled from engaging in any form of sustained remunerative activities due to the allowed psychological conditions alone.

{¶ 12} 7. On June 22, 2018, claimant filed an application for PTD compensation.

{¶ 13} 8. On March 5, 2019, a staff hearing officer ("SHO") held a hearing on claimant's application for PTD, and on March 26, 2019, the SHO denied the application for PTD, finding: (1) based on the reports of Drs. Kiva Shtull, M.D., John Dunne, D.O., Paul Freedman, M.D., Graham Young, Ph.D., and Lynn Luna-Jones, Ph.D., claimant is capable of sustained remunerative employment; (2) claimant's age is not a detriment to obtaining employment within his restrictions; (3) claimant's education level, training, and military experience are positive vocational factors; (4) claimant's work history allows him to obtain employment within his restrictions; (5) the January 7, 2019, employability assessment report by Kate Guereni, M.Ed., CRC, found several job matches in the sedentary category; (6) claimant failed to make any effort to find other employment or seek vocational retraining; (7) claimant asserts he was unable to return to work based upon his inability to use his right hand and a prior finding that he was not feasible for vocational training; (8) the October 10, 2017, vocational assessment by Kevin Malone, M.D., indicates that claimant stated if he goes back to work, he wants to go back as a lineman, and he was concerned about what other jobs would earn him $38 per hour; (9) the lowest wage he would accept would be $25 per hour, and he is not willing to relocate or travel outside of a one-hour radius for employment; (10) at the time of the October 10, 2017 assessment, claimant had not reached maximum medical improvement ("MMI") and was not released to return to work by the physician of record; thus, he was

found unlikely to be an appropriate candidate for vocational rehabilitation; (11) claimant made no further attempt to pursue rehabilitative training or efforts to return to work subsequent to the October 10, 2017, assessment or after he was found to have reached MMI; (12) claimant failed to make any reasonable effort to return to some employment prior to the filing of his application for PTD; (13) claimant self-limited his participation in vocational efforts by only wanting to pursue employment that would pay minimally $25 per hour; (14) despite his restrictions, claimant socializes with friends and family and spends winter months in Arizona, which furthers his lack of interest in pursuing employment within his restrictions; thus, claimant voluntarily abandoned the workforce, precluding payment of PTD; and (15) there is insufficient evidence that the allowed conditions in the claims prevented claimant from returning to sustained remunerative employment.

{¶ 14} 9. On March 29, 2019, claimant filed a motion requesting nine additional allowances.

{¶ 15} 10. On April 9, 2019, claimant filed a request for reconsideration.

{¶ 16} 11. On June 18, 2019, the commission granted claimant's request for reconsideration and awarded claimant PTD compensation starting April 2, 2018, to continue unless future facts or circumstances warrant the stopping of the award. The commission found the following: (1) the SHO's order contained a clear mistake of fact in finding that claimant failed to make any effort to seek vocational rehabilitation; (2) the SHO's order contained a clear mistake of law in finding that claimant failed to make any effort to find other employment or failed to make a reasonable effort to return to some employment prior to the filing of his application for PTD; and (3) based on the April 2, 2018, report of Dr. Hochman, and the April 30, 2018, report of Dr. Richetta, claimant is unable to perform sustained remunerative employment solely as a result of the medical impairment caused by the allowed physical and psychological conditions; thus, it is not necessary to discuss or analyze claimant's non-medical disability factors.

{¶ 17} 12. On June 25, 2019, a District Hearing Officer ("DHO") allowed six of the nine additional conditions requested in the March 29, 2019, motion. The employer and the claimant appealed, and the SHO affirmed the DHO's order on August 6, 2019. The commission refused further appeal.

{¶ 18} 13. On July 30, 2019, the employer filed a complaint for writ of mandamus, requesting that this court vacate the commission's order that granted claimant PTD compensation, and to enter an order denying the compensation.

Conclusions of Law and Discussion:

{¶ 19} The magistrate recommends that this court deny the employer's request for a writ of mandamus.

{¶ 20} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). In matters before it, the commission is the exclusive evaluator of the weight and credibility of the evidence. *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287 (2000). Therefore, to be entitled to an extraordinary remedy in mandamus, the relator must demonstrate, by clear and convincing evidence, that the commission abused its discretion by entering an order not supported by any evidence in the record. *State ex rel. WFAL Constr. v. Buehrer*, 144 Ohio St.3d 21, 2015-Ohio-2305, ¶ 12.

{¶ 21} The relevant inquiry in a determination of PTD is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record, and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994).

{¶ 22} In the present matter, the magistrate initially notes that the employer does not raise any issue with regard to whether some evidence existed demonstrating that relator was permanently and totally disabled. The commission relied on the April 2, 2018, report of Dr. Hochman, and the April 30, 2018, report of Dr. Richetta to support its determination that claimant was unable to perform sustained remunerative employment solely as a result of the medical impairment caused by the allowed physical and

psychological conditions. Instead, the employer's first argument is narrower. The employer argues the commission abused its discretion when it awarded PTD compensation to claimant because the commission failed to address the SHO's finding that claimant voluntarily abandoned the workforce. The employer asserts that this was a key issue because the SHO's determination that claimant voluntarily abandoned the workforce operates to preclude claimant from receiving PTD compensation, and there is no evidence that the commission considered evidence of claimant's voluntary abandonment. The magistrate disagrees.

{¶ 23} The commission did, in fact, address the issues underlying the SHO's voluntary-abandonment conclusion. With regard to voluntary abandonment, the SHO found that claimant, despite his restrictions as outlined in his application for PTD, socializes with family and friends, and spends winter months in Arizona. The SHO concluded that this lifestyle choice by claimant supports his lack of interest in pursuing employment within his restrictions and, therefore, claimant voluntarily abandoned the workforce. Upon reconsideration, the commission found that the SHO made a clear mistake of law when she found that claimant failed to make any effort to find other employment or failed to make a reasonable effort to return to some employment prior to filing his application for PTD. The commission's conclusion regarding claimant's lack of effort to find or return to some employment is in opposition to the SHO's finding that claimant lacked interest in pursuing employment because of his lifestyle choices, which was the basis for the SHO's voluntary abandonment determination. Thus, the commission's conclusion did address the reasons underlying the SHO's voluntary-abandonment determination.

{¶ 24} Notwithstanding, the pursuit of vocational rehabilitation and the finding that the employee was not a feasible candidate for rehabilitation services may constitute evidence supporting a conclusion that the employee did not voluntarily abandon the workforce. *State ex rel. Bonnlander v. Hamon*, 161 Ohio St.3d 373, 2020-Ohio-4269, ¶ 23. Here, the commission found the SHO's order contained a clear mistake of fact in finding that claimant failed to make any effort to seek vocational rehabilitation. There was some evidence in the record to support this finding. The record shows that, although claimant expressed that he was interested in vocational rehabilitation services, and, in

fact, underwent a functional capacity evaluation, claimant's case manager concluded he was not a feasible candidate for vocational rehabilitation services. Thus, claimant did pursue vocational rehabilitation but was found not to be a feasible candidate. Because claimant was found not to be a feasible candidate for vocational rehabilitation services and was then soon after deemed incapable of sustaining remunerative employment by Drs. Hochman and Richetta, the commission had some evidence to conclude that claimant had not voluntarily abandoned the workforce. Therefore, the employer has failed to demonstrate a clear legal right to relief, in this respect.

{¶ 25} The employer's second argument is that the commission abused its discretion when it awarded claimant PTD compensation while nine additional allowances were pending and not yet adjudicated. The employer asserts that nonallowed conditions cannot be used to advance a PTD claim, but Drs. Hochman and Richetta, on which the commission relied in granting PTD compensation, did not contain any discussion as to whether the pending additional allowances, which he applied for three days after the SHO's order, contributed to claimant's PTD. The employer contends this was significant because Drs. Hochman and Richetta may have ultimately concluded that a nonallowed condition was the cause of or contributed to the disability.  The employer's arguments are without merit.

{¶ 26} The claimant bears the burden of proving that the allowed conditions in the workers' compensation claim render the claimant unable to return to sustained remunerative employment. *State ex rel. McKee v. Union Metal Corp.*, 150 Ohio St.3d 223, 2017-Ohio-5541, ¶ 9. PTD cannot be based, wholly or partially, on nonallowed medical conditions. *State ex rel. Fields v. Indus. Comm.*, 66 Ohio St.3d 437 (1993). However, the presence of debilitating nonallowed conditions does not preclude PTD compensation so long as the allowed conditions independently prevent sustained remunerative employment. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993). Thus, nonallowed conditions can neither advance nor defeat a claim. *Id.*

{¶ 27} Here, in his April 2, 2018, report, Dr. Hochman specifically stated that claimant was permanently and totally disabled as a result of the January 18, 2012, work accident, and the conditions recognized in the claims at the time. Likewise, in his April 30, 2018, report, Dr. Richetta specifically found claimant was permanently and totally

disabled from engaging in any form of sustained remunerative activities due to the allowed psychological conditions alone. These opinions are clear and unequivocal. Both doctors found claimant was permanently and totally disabled based on the currently allowed conditions and do not refer to any other nonallowed conditions. The commission made its determination based on the conditions that were allowed at the time of adjudication, and found the allowed conditions alone rendered claimant permanently and totally disabled. That there existed nine nonallowed conditions pending at the time of Drs. Hochman's and Richetta's reports does not undermine the fact that both doctors limited their opinions to those conditions currently allowed in the claim. Therefore, the employer has failed to show that the commission abused its discretion when it awarded claimant PTD compensation while nine additional allowances were pending and not yet adjudicated.

{¶ 28} Accordingly, it is the magistrate's recommendation that this court should deny the employer's request for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).